**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KEITH SLADE, et al., | ) ) ) | |
| Movants | ) ) | Case No. 1:05-mc-00299-RCL |
| v. | ) ) | |
| UNITED STATES GOVERNMENT PRINTING OFFICE, | ) ) ) ) | |
| Respondent. | ) ) | |

**RESPONDENT'S OPPOSITION TO THE MOVANTS'
"MOTION TO CHALLENGE GOVERNMENT ACCESS TO FINANCIAL
RECORDS" AND RESPONDENT'S MOTION TO DISMISS AND IN SUPPORT OF
ENFORCEMENT OF ADMINISTRATIVE SUBPOENA PURSUANT TO 12 U.S.C. § 3410(c)**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Respondent United States Government Printing Office ("GPO"), by and through its undersigned counsel, moves to dismiss the Movants' *Motion to Challenge Government Access to Financial Records* filed pursuant to the Right to Financial Privacy Act of 1978, 12 U.S.C. §§3401, et seq. as untimely. The GPO also opposes the relief sought by the Movants on the merits and requests that the Court, consistent with 12 U.S.C. § 3410(c), order enforcement of the administrative subpoenas at issue in this proceeding.

A proposed Order consistent with the relief requested by Respondent GPO is attached.

Date: August 11, 2005                                Respectfully Submitted,


/s/ Kenneth L. Wainstein /mj
_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


/s/ R. Craig Lawrence /mj
_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


/s/ Beverly M. Russell

Of Counsel:                                          _____
J. Anthony Ogden                                     BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant Inspector General/                         Assistant United States Attorney
Counsel to the Inspector General                     U.S. Attorney's Office for the District of Columbia,
U.S. Government Printing Office                       Civil Division
                                                     555 4th Street, N.W., Rm. E-4915
                                                     Washington, D.C.  20530
                                                     Ph:  (202) 307-0492

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KEITH SLADE, et al., ) | |
| ) | |
| Movants ) | |
| ) | Case No. 1:05-mc-00299-RCL |
| v. ) | |
| ) | |
| UNITED STATES GOVERNMENT ) | |
| PRINTING OFFICE, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF RESPONDENT'S OPPOSITION TO THE MOVANTS'
"MOTION TO CHALLENGE GOVERNMENT ACCESS TO FINANCIAL
RECORDS" AND RESPONDENT'S MOTION TO DISMISS AND IN SUPPORT OF
ENFORCEMENT OF ADMINISTRATIVE SUBPOENA PURSUANT TO 12 U.S.C. § 3410(c)**

The United States Government Printing Office ("GPO"), by and through its undersigned counsel, herein opposes the Movants' *Motion to Challenge Government Access to Financial Records* pursuant to the Right to Financial Privacy Act ("RFPA") of 1978, 12 U.S.C. §§3401, et seq. and requests that the Court, consistent with 12 U.S.C. § 3410(c), order enforcement of the administrative subpoenas at issue in this proceeding.

**I.      PROCEDURAL HISTORY**

The subpoenas giving rise to the Movants' filing were issued to Branch Bank and Trust (Wooten, North Carolina), and Bank of America (Charlotte, North Carolina) by the GPO's Office of Inspector General ("OIG") on June 16, 2005, in connection with an official investigation being conducted by that Office.  See Declaration of Special Agent Hugh D.

Coughlin, ¶ 4 (attached hereto). Copies of the subpoenas, customer notices, and forms required by the RFPA were mailed to Movants on the same date. Id. ¶ 10. The Movants subsequently challenged the OIG administrative subpoenas *duces tecum* pursuant to the RFPA, 12 U.S.C. §3410.[1] The Movants' Certificate of Service provides that a copy of the Motion to Challenge was sent to the GPO OIG on July 13, 2005. The Motion to Challenge was received by the GPO OIG on or about July 22, 2005. Coughlin Decl. ¶ 11. However, the Movants did not file their Motion with this Court until July 28, 2005.

---

[1] The statute at 12 U.S.C. § 3410(a) states, in part,

> Within ten days of service or within fourteen days of mailing of a [subpoena], summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial [subpoena], or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request, with copies served upon the Government authority. A motion to quash a judicial [subpoena] shall be filed in the court which issued the [subpoena]. A motion to quash an administrative summons or an application to enjoin a Government authority from obtaining records pursuant to a formal written request shall be filed in the appropriate United States district court. Such motion or application shall contain an affidavit or sworn statement -
>
>> (1) stating that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought; and
>> (2) stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.

## II. STATEMENT OF FACTS

On June 16, 2005, the GPO OIG issued subpoenas *duces tecum* to Branch Bank and Trust and Bank of America in relation to accounts held by Keith Slade, Fusion Construction, and Controlled Quality Corporation ("CQC") pursuant to an official OIG investigation. See Coughlin Decl. ¶ 4. The subpoenas sought information relating to account information, transactions, and other related banking statements for Respondents. Id.

The underlying investigation was opened by the GPO OIG in response to an allegation that CQC, a GPO printing contractor, had engaged in over-billing. Id. ¶ 5. Mr. Slade is the President of CQC, and has been identified as the individual who handled all of the financial matters for CQC. Id. ¶ 6.

Upon information and belief, Mr. Slade over-billed the Government from February 2002 until February 2004 in connection with printing newsletters for the Internal Revenue Service. Id. In addition, Mr. Slade allegedly subcontracted all of the work in breach of a contractual provision which prohibited the subcontracting of such work. Id. ¶ 7. During the investigation, it was determined that both Mr. Slade and CQC have bank accounts with Branch Bank and Trust and Bank of America. Id. ¶ 8.

Information regarding Mr. Slade's financial status is critical to the investigation because it will allow the GPO OIG to determine assets, as well as liabilities, and to assess Mr. Slade's ability to reimburse the Government should it be determined that he engaged in prohibited activity. Id. ¶ 8. GPO OIG's request for the subpoenaed records arises out of an

official, legitimate investigation into whether Mr. Slade engaged in the alleged over-billing. Id. ¶ 5. The GPO OIG is required to investigate such allegations in accordance with its statutory authority to investigate programs and operations of the GPO. Id.; see also Government Printing Office Inspector General Act, 44 U.S.C.A. 3901, et seq. and, the Inspector General Act of 1978, 5 U.S.C.A. app. 3.[2]

Specifically, the GPO Inspector General is authorized -- indeed, is required by law -- to conduct investigations of GPO programs in order to prevent and detect fraud, waste, and abuse. See 5 U.S.C.A. app. 3, §§ 4(a)(1). Accordingly, the investigation into allegations of over-billing is clearly within the purview of activity Congress has directed the GPO OIG to undertake. Through such investigations, the GPO OIG safeguards the integrity of GPO monies and its printing programs.

In carrying out these responsibilities, the Inspector General is authorized to subpoena the production of all information needed to perform such investigations. See 5 U.S.C.A. app. 3, § 6(a)(4).[3] The subpoenaed records sough in this matter are indispensable to the proper conduct and completion of the GPO OIG's investigation, and are essential to this legitimate

---

[2]The GPO Inspector General Act provides that "Sections 4, 5, 6 (other than subsection (a)(7) and (8) thereof), and 7 of the Inspector General Act of 1978 (Public Law 95–452; 5 App. U.S.C. 3) shall apply to the Inspector General of the Government Printing Office and the Office of such Inspector General…." 44 U.S.C. 3903(a).

[3]The Inspector General Act at 5 U.S.C. App. 3, § 6(a)(4) empowers the Inspector General, in this case, the GPO's Inspector General, to conduct investigations, to have access to all books, records and documents pertinent to authorized investigations, and to require by subpoena the production of documentary evidence necessary to implement the functions assigned by the Inspector General Act.

law enforcement inquiry. Thus, the GPO OIG is entitled to full compliance with the subpoenas issued in connection with its official investigation of Mr. Slade and his various commercial entities.

### III.    THE RIGHT TO FINANCIAL PRIVACY ACT

The RFPA provides specific procedures by which Federal authorities may obtain access to customer bank records in connection with a "legitimate law enforcement inquiry."[4] The RFPA establishes various mechanisms by which Federal access to financial records may be effectuated and generally prohibits a Federal agency from obtaining access unless the agency complies with specific requirements. See 12 U.S.C. § 3402. Among the permissible means of obtaining financial records is by way of administrative subpoena or summons. See 12 U.S.C. §3402(2).

The RFPA permits a Government authority to obtain financial records pursuant to an administrative subpoena if (1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; (2) a copy of the subpoena has been served upon the customer or mailed to his last known address on or before the date on which the subpoena or summons was served on the financial institution together with a notice as required by the RFPA; and (3) ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period

---

[4]The RFPA defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." 12 U.S.C. §3401(8).

the customer has not filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of RFPA section 3410 have been complied with. See 12 U.S.C. §3405.

A customer may bring a challenge to an administrative subpoena under the RFPA by timely filing a challenge in accordance with the "customer challenge provisions." See 12 U.S.C. §3410 (cited, in part, supra, n.1). The customer may only sustain a challenge if the financial records sought are not relevant to a legitimate law enforcement inquiry or there has not been substantial compliance with the provisions of the RFPA. See 12 U.S.C. §3410(a)(2).

### III.   ARGUMENT

####    A.   The Motion is Untimely.

The Movants' filing is untimely, and therefore, this matter should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.

Pertinent here, the doctrine of sovereign immunity bars all suits against the United States except where such immunity is expressly waived by Congress. United States v. Testan,

424 U.S. 392, 399 (1976).  "Statutory time limits on judicial review are traditionally considered jurisdictional."  See, e.g. Jordon v. Federal Election Com'n, 68 F.3d 518 (D.C. Cir. 1995).  Accordingly, failure to comply with statutory time limits bars district courts of jurisdiction to review a complainant's matter.  Section 3410(a) of the RFPA grants the United States District Courts jurisdiction over applications to enjoin Government authorities from obtaining financial records of a customer of a financial institution.  12 U.S.C. § 3410(a).  However, a customer challenging an agency's application for the customer's financial records must file in District Court within ten days of service or within fourteen days of mailing of the agency's subpoena, summons or other formal written request for records.  Id.  Failure to comply with the RFPA's filing requirements bars the district courts of jurisdiction.  See, e.g. Siegfried v. Inspector General of the U.S. Dep't of Agriculture, 163 F.Supp.2d 170 (E.D.N.Y. 2001); Turner v. United States, 881 F.Supp. 449, 451 (D.Haw. 1995).  Here, the GPO's OIG issued its subpoena on June 16, 2005 and served the Movants that same day.  See Coughlin Decl. ¶ 10.  The Movants filed their challenge to the subpoenas with this Court on July 28, 2005 well after the RFPA's filing deadline.  Accordingly, the Movants' challenge should be dismissed for lack of subject matter jurisdiction.

    **B.    The Motion Should Be Denied Because the Subpoenas Seek Records Relevant to a Legitimate Law Enforcement Inquiry.**

A federal agency's administrative subpoena should be enforced if (1) the investigation and the issuance of the subpoena are within the authority of the agency, (b) the demands sought are reasonable related to the inquiry, and (c) the demands are not unduly burdensome

or unreasonably broad.  United States v. Morton Salt Co., 338 U.S. 632, 652 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208-209 (1946); Endicott v. Perkins, 317 U.S. 501, 509 (1943).  "As a general rule, an administrative subpoena should be enforced 'if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" United States v. Florida Azalea Specialists, 19 F.3d 620, 623 (11th Cir. 1994), citing, Federal Election Commission v. Florida for Kennedy Committee, 681 F.2d 1281, 1284 (11th Cir. 1982).[5]

### 1.    The Government's Law Enforcement Inquiry is Legitimate.

The GPO OIG must conduct, supervise and coordinate audits and investigations relating to programs and operations of the GPO and has the authority to subpoena records in the performance of these functions.  See 5 U.S.C.A. app. 3, §§ 4(a)(1), 6(a)(4).  The power of the GPO OIG to investigate is essentially the same as the grand jury's and is governed by several of the same limitations:  the inquiry must not be arbitrary or in excess of statutory authority.  See Oklahoma Press Publishing Co., 327 U.S. at 216.  This does not mean however that the inquiry must be limited by forecasts of the probable results of the investigation.  Id. An investigation is legitimate if it is one the agency is authorized to make and is not being

---

[5]Normally, the court's role in the enforcement proceeding is summary in nature and is limited to an examination into whether the information sought is relevant to a lawful purpose of the agency.  See EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 922 (11th Cir. 1991).

conducted solely for an improper purpose such as political harassment or intimidation or is otherwise in bad faith. Pennington v. Donovan, 574 F. Supp. 708, 709 (S.D. Tex. 1983).

Whether there is cause to believe that a violation has been or is about to be committed is irrelevant. EEOC v. Chrysler Corp., 567 F.2d 754, 755 (8th Cir. 1977). The agency can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. Morton Salt Co., 338 U.S. at 642-43; United States v. Tyson's Poultry, Inc., 216 F. Supp. 53, 64, 67 (W.D. Ark. 1963) (USDA administrative subpoena enforced to determine whether violation has occurred).

The types of materials subject to the Inspector General's subpoena authority are broad. The Inspector General is authorized to subpoena such materials as he deems necessary to carry out his duties and responsibilities. S. Rep. No. 95-1071, 95th Cong., 2d Sess. 33, reprinted in 1978 U.S. Code Cong. & Ad. News 2708; see also United States v. Educational Dev. Network Corp., 884 F.2d 737, 740-44 (3rd Cir. 1989), cert. denied, 494 U.S. 1078 (1990). The use of the phrase "necessary in the performance of the functions assigned by this Act," is in no way intended to limit the Inspector General's subpoena power. United States v. Westinghouse Electric Corp., 788 F.2d 164, 170 (3rd Cir. 1986). Congress intended that the courts accept the Inspector General's determination of what information is needed, so long as the information is relevant to an OIG function. Id. at 171.

As noted above, this investigation was opened to determine whether Mr. Slade engaged in alleged over-billing of contract work performed on behalf of the Internal Revenue Service

through a GPO procurement. Serious questions have been raised concerning the nature of Mr. Slade's activities with regard to this printing procurement. The investigation of these allegations falls within OIG's statutory authority to investigate programs and operations of the GPO.

### 2.   The Subpoenaed Records are Relevant to the Government's Legitimate Law Enforcement Inquiry

Courts have limited authority with respect to reviewing the relevance of an administrative subpoena. During the course of an investigation, "the Court is limited in its inquiry to whether or not there is a reasonable and legitimate belief that the records sought are relevant to the . . . inquiry." Ling v. United States Dep't of Justice, 507 F. Supp. 1, 2 (S.D. Fla. 1979); see also Resolution Trust Corp. v. American Casualty Co., 787 F. Supp. 5, 6-7 (D.D.C. 1992). Further, the District of Columbia Circuit, evaluating administrative subpoenas issued by the Resolution Trust Corporation, stated, "we defer to the agency's appraisal of relevancy, which 'must be accepted so long as it is not obviously wrong.'" Resolution Trust Corp. v. Walde, 18 F.3d 943, 946 (D.C. Cir. 1994), quoting Fed. Trade Comm'n v. Invention Submission Corp., 965 F.2d 1086, 1089 (D.C. Cir. 1992). So long as the material requested "touches a matter under investigation," there exists a reasonable and legitimate belief that the records sought are relevant. Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank. Bd., 878 F.2d 875, 882 (5th Cir. 1989), quoting Equal Employment Opportunity Comm'n v. Elrod, 674 F.2d 601, 613 (7th Cir. 1982) (citations omitted).

Moreover, the Supreme Court has stated that production of evidence will be ordered unless the documents are "plainly incompetent or irrelevant to any lawful purpose" of the agency. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509 (1943); accord United States v. Aero Mayflower Transit Co., Inc., 831 F.2d 1142, 1145 (D.C. Cir. 1987); Westinghouse Electric Corp., 788 F.2d at 170. A subpoena for records that may simply lead to other evidence which, in turn, will establish violations of law, will be enforced. Pennington, 574 F. Supp. at 709.

The Inspector General's own determination of the scope of his investigative authority is entitled to great weight by the courts:

> In view of the well-established principle of deference to agency discretion in issuing subpoenas and in the absence of contrary legislative history, we believe Congress intended that the courts accept the Inspector General's determination of what information is "necessary to carry out the functions assigned by this Act" so long as the information is relevant to an Inspector General function.

Westinghouse Electric Corp., 788 F.2d at 171; see also Oklahoma Press Publishing Co. v. Walling, 327 U.S. at 214 (agencies generally are granted broad deference in determining the scope of their investigative authority).

Additionally, courts have adopted a "strictly limited role" when they review administrative subpoenas pursuant to the RFPA. See Sandsend Fin. Consultants, Ltd. 878 F.2d at 879. Furthermore, the RFPA was crafted cautiously to limit a customer's right to challenge an administrative subpoena:

11

> [The RFPA] carefully limits the kinds of customers to whom it applies, §§ 3401(4), (5), and the types of records they may seek to protect, § 3401(2). A customer's ability to challenge a subpoena is cabined by strict procedural requirements. For example, he must assert his claim within a short period of time, § 3410(a), and cannot appeal an adverse determination until the Government has completed its investigation, § 3410(d). Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections will delay or frustrate agency investigations.

S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 745-46 (1984).

Here, the Movants have not presented "a factual basis for concluding that there is no reason to believe the financial records [which] are being sought contain information relevant" to GPO OIG's investigation, which the House Report accompanying the RFPA stated that the customer's affidavit must contain. See Hancock v. Marshall, 86 F.R.D. 209, 211 (D.D.C. 1980), citing H.R. Rep. No. 1383, 95th Cong., 2d Sess. 53 (1978), reprinted in U.S. Code Cong. & Admin. News 1978, pp. 9273, 9325) (emphasis added). Rather, the Movants merely makes conclusory statements in their Motion that the documents requested are not relevant to a legitimate law enforcement inquiry, and that the subpoena is unreasonable and oppressive.

The GPO OIG has determined that the subpoenaed records are needed to determine whether Mr. Slade has assets available against which the Government may recover, should the Government bring and prevail in an action against Mr. Slade. Special Agent Coughlin's declaration supports the determination that the subpoenaed records are relevant to the legitimate, official OIG investigation.

### 3. The Scope of the Subpoenas are Neither Too Indefinite Nor Unreasonably Burdensome.

The Movants claim that the subpoena subjects them to "undue burden" and are otherwise "unreasonable and oppressive." See Movants' Affidavit in Support of Challenge ¶ 6. The subpoenas at issue contain requests for specific financial records that are not in the possession of the Movants. Accordingly, the Movants' claims are without merit. Assuming, arguendo, that Movants' claim of undue burden has any merit, the request is neither indefinite nor unreasonably burdensome. "[S]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." FTC v. Texaco, 555 F.2d 862, 882 (D.C. Cir. 1977) (en banc), cert. denied, 431 U.S. 974 (1977); see also United States v. Aero-Mayflower Transit Co., 646 F. Supp. 1467, 1472 (D.D.C. 1986) ("burden by itself does not deny enforcement"). The limited document requests made in the subpoenas are clear and limited in scope. Thus, the requests are not unduly burdensome. Moreover, the Movants need not take any action in order to comply with the subpoena requests – in such case there can be no burden placed upon any of the Movants to comply.

### 4. The OIG Substantially Complied With The RFPA's Customer Notice Provisions.

The RFPA requires that, before obtaining customer records pursuant to an administrative subpoena, the Government must forward a copy of the subpoena to the customer and provide the customer with reasonably specific notice of the nature of the law enforcement inquiry. See 12 U.S.C. § 3405(2). The RFPA requires only "substantial

13

compliance." See 12 U.S.C. § 3410(a)(2). This standard is intended to ensure that minor technical violations do not provide a basis for denying access to the records sought. H.R. Rep. No. 1383, 95th Cong., 2d Sess. 224 (1978) (additional views of Mr. LaFalce), reprinted in 1978 U.S. Code Cong. & Ad. News 9354.

In the present case, copies of the subpoenas, along with Customer Notices, copies of correspondence with the Banks, Statement(s) of Customer Rights Under the Right to Financial Privacy Act of 1978, Customers Sworn Statement for Filing a Challenge in the United States District Court, Customers Motion to Challenge Governments Access to Financial Records, Instructions for Completing and Filing the Enclosed Motion and Sworn Statement and Certificates of Service, were sent via certified mail to the Respondent's residence, located at 455 Park Rd N.W., Washington, D.C. 20010. Coughlin Decl. ¶ 10. The Notice advised the Movants of an official investigation being performed pursuant to the GPO Inspector General Act.

The notice was adequate to meet the requirements of the RFPA and has not been challenged by Movants. Moreover, the notice met the specificity required under the RFPA. See Olsen v. United States Dep't. of Housing and Urban Development, Civ. A. No. 95-3389 and 95-3390, 1995 WL 686762, *2 (E.D. La. Nov. 16, 1995)("The RFPA does not require [the government] to 'disclose the results of a law enforcement inquiry prior to obtaining evidence in such an inquiry.'").

14

## IV.   CONCLUSION

The Movants' customer challenge pursuant to 12 U.S.C. § 3410(a) should be denied and dismissed.   As an initial matter, the challenge is untimely.  Second, the OIG must have access to the records requested by the subpoenas to complete a legitimate law enforcement investigation.  Accordingly, the GPO respectfully requests that this Court deny the relief requested by the Movants and issue an Order enforcing the subpoena.

Date: August 11, 2005                                        Respectfully Submitted,


                                                                          /s/ Kenneth L. Wainstein /mj

                                                                          _____
                                                                          KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                                                          United States Attorney

                                                                          /s/ R. Craig Lawrence /mj

                                                                          _____
                                                                          R. CRAIG LAWRENCE, D.C. BAR # 171538
                                                                          Assistant United States Attorney

                                                                          /s/ Beverly M. Russell

Of Counsel:                                                           _____
J. Anthony Ogden                                              BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant Inspector General/                            Assistant United States Attorney
Counsel to the Inspector General                  U.S. Attorney's Office for the District of Columbia,
U.S. Government Printing Office                    Civil Division
                                                                          555 4th Street, N.W., Rm. E-4915
                                                                          Washington, D.C.  20530
                                                                          Ph:  (202) 307-0492