IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH SLADE, et al.,          )
                              )
        Movants               )
                              )   Case No. 1:05-mc-00299-RCL
    v.                        )
                              )
UNITED STATES GOVERNMENT      )
PRINTING OFFICE,              )
                              )
        Respondent.           )
_____)

## DECLARATION

I, Special Agent Hugh D. Coughlin, pursuant to 28 U.S.C. § 1746 state:

1. I am a Criminal Investigator with the U.S. Government Printing Office (GPO), Office of the Inspector General (OIG). I have over 7 years of federal law enforcement experience, five of which have been conducting investigations into felony and misdemeanor violations of federal law. I have had considerable training and experience relative to the conduct of criminal investigations. I am duly commissioned as a Special Agent, and am authorized to conduct criminal and other investigations arising under the laws of the United States and contracts administered by the Government Printing Office, to carry firearms, to make arrests, to serve subpoenas and summonses, and to require and receive information relating to such laws and regulations.

2. I am making this declaration in support of the enforcement of administrative subpoenas *duces tecum* issued by the Inspector General, GPO OIG, under authority of Public Law 95-452, the Inspector General Act of 1978, 5 U.S.C.A. app. 3, § 6(a)(4).

3. The GPO OIG has a Congressional mandate to conduct audits and investigations relating to programs and operations of GPO in order to detect and prevent fraud, waste, and abuse. 5 U.S.C.A. app. 3, §§ 4(a)(1), 6(a)(4).

4. On June 16, 2005, Gregory A. Brower, Inspector General, issued subpoenas *duces tecum* to Branch Bank and Trust (BB&T) and Bank of America in relation to accounts held by Controlled Quality Corporation (CQC), Keith Slade, and Fusion Construction, Washington DC ("Respondents"), pursuant to an official GPO OIG investigation. The subpoenas requested information relating to account information, transactions, and other related banking statements

for Respondents. I am making this declaration based upon my first-hand knowledge of this investigation.

5.  The subpoenaed records are required for this official, legitimate OIG investigation. The GPO OIG opened an official investigation in order to determine whether Respondents engaged in alleged over-billing after having received information from a GPO Printing Officer that CQC, a GPO printing contractor, had been engaged in such activity. OIG is required to investigate such allegations in accordance with its statutory authority to investigate programs and operations of the GPO.

6.  In this case, Mr. Keith O'Brient Slade, President of CQC, who handled all of the financial matters for the company, allegedly over-billed the government for services from February 2002 until February 2004 in connection with printing newsletters for the Internal Revenue Service. Mr. Slade reportedly over-billed the number of leaves of paper used for printing the newsletters. In the printing industry, it is common knowledge that a saddle stitch document requires one leaf of 11 x 17 paper folded to make four 8 ½ x 11 pages (One leaf equals four pages). For example: If the print job called for a twelve page document, Slade would bill for twelve leafs, rather than the three leaves that were actually used to produce the document.

7.  The investigation further determined that Mr. Keith O'Brient Slade subcontracted all of the work because of his inability to print the newsletters in a cost effective manner. Mr. Slade and his company subcontracted all of the work out to another company, despite the fact that the contract prohibited the subcontracting of the predominate function of the work.

8.  The subpoenas were issued in an effort to determine the ability of CQC and Mr. Slade to pay a civil judgment should the US Attorney file and prevail in an action against Mr. Slade. Information regarding Mr. Slade's financial standing is critical to the investigation to determine assets, as well as liabilities, in order to determine his ability to pay. During the investigation it was determined that both Mr. Slade and CQC have bank accounts with BB&T Bank and Bank of America. It is also suspected that Mr. Slade and CQC utilized these accounts to funnel proceeds received from the illegal activity.

9.  Trash covers have been conducted as part of this investigation. On June 7, 2005, Mr. Slade was witnessed carrying a garbage bag out of his residence which he placed on the sidewalk in front of the house. The garbage was picked up by agents and examined for its contents, which is a common practice for obtaining information in an investigation. During this trash cover evidence was obtained to suggest that Mr. Slade was working from his home and had established companies in addition to CQC. The additional companies are known as Fusion Construction, LLC and Canaan Properties, LLC. Mr. Slade is identified as president of both companies. The trash covers provided evidence that Mr. Slade is utilizing Fusion Construction for additional work and that Mr. Slade, CQC, and these additional companies utilize the services of BB&T and Bank of America. Since this is a civil investigation, IG subpoenas are essential in this investigation in order to determine where the monies received from the alleged fraud were deposited. It is anticipated that once the records are obtained, reviewed, and it is determined where the proceeds are located, a complaint will be filed in the U.S. District Court. It is further

anticipated that once the complaint is filed, an affidavit will be written and utilized under the Federal Debt Collection Procedures Act, 28 U.S.C. Chapter 176, to make the government whole due to the fraud committed by Mr. Slade and CQC.

10. On June 16, 2005, I issued two subpoenas to BB&T and two subpoenas to Bank of America via certified mail to each bank's Custodian of Records, with instructions. Copies of all the subpoenas which were issued, along with Customer Notices, copies of correspondence with the Banks, Statement(s) of Customer Rights Under the Right to Financial Privacy Act of 1978, Customers Sworn Statement for Filing a Challenge in the United States District Court, Customers Motion to Challenge Governments Access to Financial Records, Instructions for Completing and Filing the Enclosed Motion and Sworn Statement and Certificates of Service, were sent via certified mail to the Respondent's residence, located at 455 Park Rd N.W., Washington, D.C. 20010. None of the CQC subpoenas were sent to CQC's address of 7309 Waverly Street, Bethesda, Maryland 20814, since the company shut down and vacated the property. The subpoenas explained to Respondent that the records should be provided by June 30th, 2005, the compliance date indicated on the subpoenas.

11. On July 22, 2005, I received a Motion to Challenge Government Access to Financial Records, from Maignan & Associates, LLC, counsel for Keith O'Brient Slade.

12. The subpoenaed records are indispensable to the proper conduct and completion of OIG's investigation, and are essential to this legitimate law enforcement inquiry.

13. The GPO OIG has fully complied with all requirements of the Right to Financial Privacy Act and the Inspector General Act of 1978, in issuing the subpoenas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of August, 2005.

Hugh D. Coughlin
Special Agent
Office of Inspector General
U.S. Government Printing Office